# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>2621 East 21st Street<br>Chattanooga, Tennessee | )<br>)<br>) Case No. 1:11-mj-17<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ___Eastern___ District of ___Tennessee___
*(identify the person or describe the property to be searched and give its location):*
2621 East 21st Street, Chattanooga, Tennessee

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*
See attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ___January 28, 2011___
                                                                                                 *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge ___Susan K. Lee___.
                                                     *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   ☐ for _____ days *(not to exceed 30).*
                                                                  ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _1/27/2011 at 4:54 p.m._                    _/s/ Susan K. Lee_
                                                                                              *Judge's signature*

City and state:   ___Chattanooga, Tennessee___         ___Susan K. Lee, U.S. Magistrate Judge___
                                                                                     *Printed name and title*

# ATTACHMENT A

1. To get to the residence proposed for the search, travel North on Dodds Avenue, turn right on E. 21st Street, and the house is a short distance down the street on the left.

   Your Affiant further believes probable cause exists to have the residences/properties at 2621 East 21st Street searched for the following items:

   a) Books, photographs, records, receipts, notes, ledgers and other papers which show the transportation, ordering, purchase, distribution, possession, sale or manufacture of controlled substances;
   b) Address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers, written or typed by hand as opposed to printed commercially;
   c) Books, letters, records, computerized and electronic records, receipts, bank statements and records, money drafts, letters of credit, wire transfers, safe deposit box keys, money order and cashier's check receipts, passbooks, bank checks, and other items that reflect the expenditure, obtaining, secreting, transfer or concealment of drug proceeds;
   d) United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, notes and other documents showing an accumulation of assets, wealth, or money to the extent that these items are found in such quantity, substance and/or quality as to permit a reasonable inference that such items are proceeds of drug trafficking;
   e) Controlled substances, material and paraphernalia for manufacturing, packaging, cutting, weighing and distributing controlled substances, in particular marijuana but not limited to scales, baggies, packing material;
   f) Indicia of occupancy, residency, and/or ownership of the premises described above and other real property, including but not limited to deeds, utility and telephone bills, canceled envelopes and keys;
   g) The visual image, by way of photography, of all furnishings and equipment in, on, under, attached, or appurtenant to said premises;
   h) Papers, tickets, notes, schedules, receipts and other documents relating to travel to and from drug source areas and drug distribution areas;
   i) Records of real estate purchases, sales, and transfers to include but not limited to deeds, warranty deeds, quit claim deeds, closing statements, and appraisals.
   j) Photographs, papers, tickets, notices, credit card receipts, travel schedules, travel receipts and records, passports, and/or records and other items relating to travel and transportation.
   k) Telephone records and bills.
   l) Bank statements, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, money wrappers, wire transfer applications and/or

    receipts, fictitious identification.
m) United States Currency, Precious metals, jewelry, and financial instruments including but not limited to stocks and bonds, and vehicle registration and title documents.
n) Firearms;
o) Any and all other material evidence of violations of 21 U.S.C. §§ 841(a)(1), 843(b), 846, and 881 which include manufacturing, possession with intent to distribute and distribution of controlled substances.

# RETURN

**Case No:** 1:11 – MJ-17

**Date and Time warrant executed:** 01/28/2011  10:00 AM

**Copy of warrant and inventory left with:** Jermichael YOUNG

**Inventory made in the presence of:** TFO Bill Bailey

**Inventory of the property taken:**

- Baggy of marijuana
- Baggy containing crack cocaine.

### Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to designated judge.

**Date:** 01/28/2011

_____
Executing officer

___TFO James Hixson_____
**Printed Name and Title**


# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>2621 East 21st Street<br>Chattanooga, Tennessee | Case No. 1:11-mj-17 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
2621 East 21st Street, Chattanooga, Tennessee

located in the ___Eastern___ District of ___Tennessee___, there is now concealed *(identify the person or describe the property to be seized)*:
See attached affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 843(b) and 881 | Manufacturing, possession with intent to distribute of controlled substance |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

James Hixson, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/27/2011 at 4:56 p.m.

City and state: Chattanooga, Tennessee

*Judge's signature*

Susan K. Lee, U.S. Magistrate Judge
*Printed name and title*

# AFFADAVIT OF TFO JAMES HIXSON

I, James C. Hixson, being duly sworn, depose and state as follows:

1. I am a Task Force Officer with the Drug Enforcement Administration (DEA) Field Office in Chattanooga, Tennessee. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been employed as a Police Officer with the Chattanooga Police Department for the past fifteen (15) years. I have been assigned as a Police Officer/Investigator in Narcotics/ Street Crimes Unit for three (3) years. I am currently assigned as a Task Force Officer for the Drug Enforcement Administration (DEA) Resident Office in Chattanooga, Tennessee. I have been a Task Force Officer for the past six (6) years. As a Police Officer/Investigator, I gained a working knowledge in narcotics trafficking methods and techniques. My present duties include the investigation of violations of federal law by individuals involved in the sale and distribution of controlled substances. I have had specialized training with respect to narcotics violations and has been involved in numerous investigations involving the seizure of controlled substances. I have obtained the information contained in this affidavit through personal observation and investigation, information related by fellow law enforcement officers, cooperating defendants, witnesses and informant statements.

3. This affidavit is submitted in support of the application of a search warrant of 2621 East 21st Street, Chattanooga, Tennessee. The information contained in this affidavit has been related to your affiant by fellow law enforcement officers, cooperating defendants, undercover officers, witnesses and CS-1's information.

Based upon your affiant's training, experience, and participation in investigation involving large or numerous quantities of narcotics and/or controlled substances, your affiant knows:

> That drug traffickers very often place assets in names other than their own to avoid detection of these assets by government agencies;
>
> That even though these assets are in other person's names, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;
>
> That narcotics trafficker's maintain on hand large amounts of U.S. currency in order to maintain and finance their ongoing narcotics business;
>
> That narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That narcotics traffickers commonly "front" (provide narcotics on consignment) controlled substances to their clients; that the

aforementioned books, records, receipts, notes, ledgers, etc. are maintained in their residences, businesses and/or other locations where the traffickers have ready access to them;

That it is common for drug dealers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities;

That it is common for persons involved in narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, safe deposit box keys, and money wrappers. These items are maintained by the narcotics trafficker within their residences, businesses, or other locations over which they maintain dominion and control;

That drug traffickers often utilize electronic equipment such as computers, telex machines, facsimile machines, currency counting machines, video surveillance equipment, and telephone answering machines to generate, transfer, count, record and/or store information described in the aforementioned paragraphs above;

That when drug traffickers amass large proceeds from the sale of narcotics that the drug trafficker's attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize, including but not limited to, domestic and international banks and their attendant services, securities brokers, professionals such as attorneys, and accountants, real estate, and business fronts and otherwise legitimate businesses which generate large quantities of currency;

That drug traffickers commonly maintain addresses of telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

That drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product. That these traffickers usually maintain these photographs in their possession;

That drug traffickers commonly have in their possession that is on their person, at their residences and/or their businesses, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure a drug trafficker's property. Such property may include, but is not limited to narcotics, jewelry, narcotics paraphernalia, books, records and U.S. currency.

4. An investigation conducted by the Drug Enforcement Administration Chattanooga Resident Office and Federal Bureau of Investigation identified Jermichael YOUNG and Tangia GARNER as individuals responsible for the distribution of quantities of cocaine base (crack cocaine) in the Southeast Tennessee including Chattanooga, Tennessee.

5. On November 08, 2010, TFO Hixson met a confidential source here in after referred to as CS-1, at a predetermined location to debrief CS-1 concerning the purchase of one-half ounce of cocaine base (crack) from Jermichael YOUNG. TFO Hixson searched CS-1 with negative results, provided CS-1 with a digital recording device, and provided CS-1 with $400 official authorized funds (OAF) for the purchase of the cocaine base.

6. At approximately 1:20 PM, Officers and Agents of the Chattanooga RO and FBI office established surveillance on 2621 East 21th Street in Chattanooga, Tennessee. Upon arrival at 2621 East 21th Street, CS-1 met with a female identified as Tangia GARNER. According to CS-1, GARNER called YOUNG and told YOUNG that CS-1 was at the residence and needed to purchase crack cocaine. GARNER then told CS-1 that YOUNG would arrive shortly and asked CS-1 to wait.

7. At approximately 1:34 PM, officers observed a maroon and silver colored Chevy Suburban arrive and park in front of CS-1 on East 21st Street. According to CS-1, Jermichael YOUNG was the driver of that vehicle. YOUNG and CS-1 spoke for a moment while CS-1 observed GARNER walk to the rear of the residence. Upon GARNER returning to the front of the residence at 2621 East 21st Street where YOUNG and CS-1 stood, GARNER handed YOUNG a plastic bag containing crack cocaine. YOUNG provided CS-1 with a bag containing the crack cocaine. CS-1 gave YOUNG $400 OAF to consummate the transaction.

8. At approximately 1:40 PM, CS-1 drove away from the residence at 2621 East 21st Street and met TFO Hixson at a predetermined location. CS-1 gave TFO Hixson the bag containing cocaine base. TFO Hixson debriefed CS-1 concerning the purchase and events, then conducted a search of CS-1 with negative results.

9. On November 10, 2010, DEA TFO James Hixson formulated plans to have CS-1 purchase one ounce of crack cocaine from Jermichael YOUNG.

10. TFO Hixson met CS-1 at a predetermined location to brief CS-1 concerning the purchase of one ounce of crack cocaine from Jermichael YOUNG. TFO Hixson searched CS-1 with negative results and provided CS-1 with a digital audio recording device, and $1000 official authorized funds (OAF) for the purchase of the crack cocaine.

11. At approximately 1:15 PM, Officers and Agents of the Chattanooga RO followed CS-1 to 2621 East 21th Street, Chattanooga, Tennessee and established surveillance as CS-1 arrived and met with Jermichael YOUNG.

12. According to CS-1, YOUNG invited CS-1 into his (YOUNG) residence at 2621 East 21st Street and began talking with CS-1. CS-1 stated that YOUNG began bragging about taking care of CS-1 on dope deals and that CS-1 needed to keep coming to YOUNG for future crack cocaine transactions. CS-1 told YOUNG that CS-1 needed to purchase 1 ounce of crack cocaine. YOUNG then told CS-1 to wait a moment while he (YOUNG) walked over and spoke with Tangia GARNER.

13. CS-1 watched as GARNER then walked out of the residence and over to where YOUNG usually parked his vehicle. CS-1 believed GARNER retrieved the crack cocaine from a hiding spot in a wooded area not far, from where YOUNG parks his vehicle. After retrieving the crack cocaine, GARNER returned to the residence and gave YOUNG a baggy containing crack cocaine. YOUNG then handed the bag to CS-1 in exchange for $1000 OAF.

14. At approximately 1:30 PM, CS-1 pulled from the residence at 2621 East 21st Street and met TFO Hixson at a predetermined location. CS-1 gave TFO Hixson the bag containing crack cocaine. TFO Hixson debriefed CS-1 concerning the purchase and events. TFO Hixson then conducted a search of CS-1 with negative results.

15. On January 04, 2011, DEA TFO James Hixson and DEA SA David Shelton met with CS-1 to brief the purchase one ounce of crack cocaine from Jermichael YOUNG at his residence 2621 East 21st Street. TFO Hixson searched CS-1 and CS-1's vehicle with negative results. TFO Hixson then provided CS-1 with $1100 in official authorized funds (OAF) and a digital recording device.

16. At approximately 1:10 PM, Officers and Agents established surveillance on 2621 East 21st Street. At approximately 1:15 PM, CS-1 left the meeting location and traveled to YOUNG'S residence at 2621 East 21st Street. At approximate 1:21 PM, CS-1 arrived at 2621 East 21st Street and began talking to YOUNG who was outside the residence near the front door. According to CS-1, several individuals were hanging out on the front porch talking when CS-1 arrived. CS-1 said a Schwann's food delivery service truck was parked in front of the residence. CS-1 told YOUNG that he/she wanted one ounce of crack cocaine. YOUNG told CS-1 and the individuals hanging out in front of the residence that they would have to go inside his residence while he (YOUNG) retrieved the crack cocaine. Once inside the residence, CS-1 said that Tangia GARNER was in a room purchasing food from the Schwann's deliveryman.

17. At approximately 1:26 PM, TFO Hixson conducted a drive-by of the residence at 2621 East 21st Street and observed YOUNG walk to a waist-high wall outside the residence. YOUNG appeared to retrieve something from the wall. SA Shelton also conducted a drive-by and noted YOUNG appeared to be bent over picking something

up. Due to the location of the residence, TFO Hixson or SA Shelton were not able to maintain a visual of YOUNG or the residence for more than a brief moment.

18. According to CS-1, once YOUNG had everyone step inside his residence CS-1 watched as YOUNG walked to the southeast side of the residence. The southeast side of the residence is the general location where TFO Hixson and SA Shelton observed YOUNG. CS-1 said that within minutes, YOUNG entered the residence and exchanged CS-1 one ounce of crack cocaine in exchange for the $1100 in OAF. According to CS-1, YOUNG discussed the current prices of cocaine and explained that he purchased multi ounces of cocaine at a time and that the prices are high due to the holidays.

19. At approximately 1:30 PM, officers and agents observed CS-1 leaving the residence at 2621 East 21st Street and followed CS-1 back to meet with TFO Hixson at a predetermined location. Upon meeting with TFO Hixson, CS-1 gave TFO Hixson the ounce of crack cocaine and the digital recording device.

20. On January 07, 2011, TFO Hixson and SA Gary Blevins of the FBI met CS-1 at a predetermined location to brief the CS concerning the purchase of one ounce of crack cocaine from Jermichael YOUNG. Following the briefing TFO Hixson searched CS-1 with negative results, provided CS-1 with a digital recording device, and provided CS-1 with $1100 official authorized funds (OAF) for the purchase of the crack cocaine.

21. At approximately 1:45 PM, Officers and Agents of the Chattanooga RO and FBI office established surveillance on 2621 East 21st Street in Chattanooga, Tennessee. At approximately 1:52 PM CS-1 arrived at 2621 East 21st Street and met with YOUNG in the front yard.

22. At approximately 1:54 PM TFO Hixson drove by the residence and observed YOUNG standing in front of the residence talking with an unidentified black male and CS-1.

23. CS-1 explained to YOUNG that he needed 1 ounce of crack cocaine. YOUNG told CS-1 to wait a moment while he went into his residence at 2621 East 21st Street. Within minutes YOUNG returned from the residence and gave CS-1 a baggy containing 1 ounce of crack cocaine. CS-1 provided YOUNG with the $1100.00 in OAF to consummate the transaction.

24. At approximately 2:01 PM, CS-1 drove away from the residence and met TFO Hixson at a predetermined location. CS-1 gave TFO Hixson the bag containing crack cocaine. TFO Hixson debriefed CS-1 concerning the purchase and events, then conducted a search of CS-1 with negative results.

25. CS-1 has been a confidential source for TFO Hixson and of the F.B.I. for at least two years. CS-1 has always proven to be reliable and has always provided information that has been corroborated by law enforcement officers.

26. An NCIC inquiry has revealed that Jermichael YOUNG does have a criminal history for the distribution of illegal narcotics. Your affiant has personal knowledge of YOUNG and has arrested YOUNG in the past for distributing crack cocaine.

27. An NCIC inquiry into Tangia GARNER revealed GARNER has a criminal history and was arrested with YOUNG in 2003. GARNER and YOUNG were charged with several narcotics related crimes. GARNER was later convicted in 2005 for possession of illegal drug related paraphernalia in that same case.

28. Your affiant conducted indices checks through various databases and has found that both GARNER and YOUNG have listed 2621 East 21st Street Chattanooga, Tennessee as their residence. Your affiant further conducted an inquiry with the utilities company and learned that Tangia GARNER is listed as the resident of 2621 East 21st Street Chattanooga, Tennessee.

29. The Affiant submits that probable cause exist to believe that Jermichael YOUNG and Tangia GARNER have been involved in a continuing series of narcotics violations since at least November 2010, and is utilizing 2621 East 21st Street, Chattanooga, Tennessee, as a base for that activity.

_____
James C. Hixson
Task Force Officer, DEA

Sworn to before me and subscribed
in my presence, this 27 day of
January, 2011, at Chattanooga, Tennessee.

_____
Susan K. Lee
United States Magistrate Judge